UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 2:16-cv-400 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| JOHN E. HARDY III, | |
| Defendant. | |

Plaintiff Securities and Exchange Commission ("the Commission") alleges:

## SUMMARY OF THE ACTION

1. Between June and September 2013, John E. Hardy III ("Hardy" or "Defendant") repeatedly violated the federal securities laws by trading securities based on material non-public information that he stole from his employer, Microsoft Corporation.

2. In June 2013, Hardy purchased Microsoft put options after learning from highly confidential internal Microsoft documents, including a draft presentation to Microsoft's board of directors, that the company's fiscal-year 2013 financial results would not meet Wall Street analysts' expectations. When Microsoft issued a July 18, 2013 earnings release containing those disappointing financial results, the company's stock price decreased over 11%. Hardy sold the put options shortly after the announcement, realizing ill-gotten gains of approximately $9,000.

3. Shortly thereafter, in August 2013, Hardy purchased Nokia Corporation call options after learning in the course of his work in Microsoft's financial planning and analysis

Complaint
SEC v. Hardy
Case No.

1

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

1  department that Microsoft was planning to acquire Nokia's mobile phone business. After the
2  public announcement of the acquisition on September 2, 2013 caused the price of Nokia
3  American Depositary Shares trading in the United States to rise more than 30%, Hardy sold his
4  Nokia call options, resulting in illegal profits of approximately $175,000.

5      4.    In total, Hardy received approximately $184,000 in illegal profits by trading in
6  advance of the two announcements.

7      5.    As a senior manager in Microsoft's corporate financial planning and analysis
8  department, Hardy owed a duty to Microsoft and its shareholders to maintain the
9  confidentiality of material nonpublic information that he obtained through his employment at
10 Microsoft. He violated his duty to Microsoft and its shareholders when he traded based on that
11 information.

12     6.    Hardy knowingly or recklessly engaged in the conduct described in this
13 Complaint. Hardy violated, and unless enjoined, will continue violating, Section 10(b) of the
14 Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5
15 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

17     7.    The Commission brings this action pursuant to Sections 21(d) and 21A of the
18 Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1] to enjoin such transactions, acts, practices, and
19 courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties,
20 an officer and director bar, and such other and further relief as the Court may deem just and
21 appropriate.

22     8.    This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of
23 the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

24     9.    Venue in this District is proper pursuant to Section 27 of the Exchange Act [15
25 U.S.C. § 78aa]. Certain of the transactions, acts, practices, and courses of business constituting
26 the violations alleged herein occurred within the Western District of Washington.

27

28 Complaint                                      2                      Securities and Exchange Commission
SEC v. Hardy                                                      1617 JFK Blvd., Suite 520
Case No.                                                             Philadelphia, PA 19103
                                                                                    Telephone: (215) 597-3100

10. Assignment to the Seattle Division is appropriate because the events giving rise to the claim occurred in King County.

## THE DEFENDANT

11. Hardy, age 36, resides in Redmond, Washington. Hardy was a senior manager in the corporate financial planning and analysis ("CFP&A") department at Microsoft from 2011 until September 2015. Before joining Microsoft, Hardy worked in business development and mergers and acquisitions roles at another Fortune 500 company. Hardy has an MBA from the University of Virginia and an undergraduate business degree from Virginia Tech.

## RELEVANT ENTITIES

12. Microsoft Corporation, based in Redmond, Washington, is one of the world's largest technology companies. Microsoft's common stock trades on NASDAQ under the symbol "MSFT." Microsoft's options are listed on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, the National Securities Exchange, the American Stock Exchange, and the BATS and Direct Edge exchanges.

13. Nokia Corporation is a telecommunications and information technology company based in Espoo, Finland. Nokia's common stock trades on the Helsinki Stock Exchange and its American Depository Shares ("ADSs"), each representing one share of Nokia common stock, trade on the New York Stock Exchange under the symbol "NOK." Options to buy or sell Nokia ADSs are listed on the Chicago Board Options Exchange, the Philadelphia Stock Exchange, National Securities Exchange, the American Stock Exchange, and the BATS and Direct Edge exchanges.

## FACTUAL ALLEGATIONS

**A.   Hardy's Role at Microsoft**

14. From 2011 to 2015, Hardy was a member of Microsoft's CFP&A department, which performed a number of critical finance functions, including financial reporting, forecasting, guidance, and long-term planning. The CFP&A department also had a role in mergers and acquisitions, including by preparing cash-flow and other analyses designed to

Complaint
SEC v. Hardy
Case No.

3

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

assist Microsoft's senior management in deciding whether to fund a particular transaction. Hardy and others in the CFP&A department were also involved, from time to time, in preparing materials for meetings of Microsoft's board of directors.

15. As a senior manager in the CFP&A department, Hardy was only a few reporting levels below Microsoft's CFO, and at times carried out assignments directly for the CFO.

16. During the last two months of each quarter, Hardy helped prepare PowerPoint presentations for senior management and Microsoft's board of directors. These presentations included analyses of the company's then-current financial performance and assessments as to whether the company would meet or miss Wall Street analysts' expectations for the quarter. These presentations were highly confidential and distribution was limited to a small number of employees within Microsoft.

17. One of Hardy's most important assignments during the summer of 2013 was the preparation of a quarterly revenue analysis for all of Microsoft's products, including the Windows operating system and the Surface tablet. To prepare the analysis, Hardy collected and analyzed information about Microsoft's then-current and prospective sales and revenue. He had access to company-wide, near real-time sales information for all Microsoft products and also spoke regularly to finance managers within the company's operating divisions about their respective division's performance. Hardy's revenue analysis was ultimately used by Microsoft's CFO and other members of the company's senior leadership team in decision-making and in providing updates to the board of directors.

**B.     Hardy Traded Microsoft Put Options Based on Material Non-Public Information about Microsoft's Fourth-Quarter and Full-Year 2013 Results**

18. Microsoft's fourth quarter and fiscal year both end on June 30 each year, and the company issues its earnings release announcing fourth-quarter and year-end results during late July each year.

19. In the weeks before Microsoft announced its fourth-quarter and full-year 2013 financial results on July 18, 2013, Hardy learned that Microsoft would be reporting financial

Complaint
SEC v. Hardy
Case No.

4

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

results that were below analysts' expectations at that time. As described in more detail below, Hardy received a steady stream of confidential information in May and June 2013 indicating that revenues from the sale of the Windows operating system and the Surface tablet would be worse than expected for the fourth quarter and fiscal year ending June 30, 2013.

20. On May 13, 2013, Hardy's manager forwarded him an e-mail chain in which a divisional CFO informed Microsoft's CFO that revenue generated by sales to original equipment manufacturers ("OEMs") was significantly down when compared to the previous fiscal year. At the time, approximately 65% of Windows revenue was generated by sales to OEMs.

21. During May and early June 2013, Hardy and his CFP&A colleagues worked on a PowerPoint presentation for the meeting of Microsoft's board of directors scheduled to take place on June 11 and June 12, 2013 (the "June board presentation").

22. One of Hardy's close friends and colleagues prepared slides for the June board presentation that showed how Microsoft's fourth-quarter 2013 earnings compared with Wall Street analysts' consensus estimates. The slides, which Hardy received by e-mail, showed operating income, earnings-per-share, and revenue estimates that were lower than the analysts' consensus. The presentation was clearly marked on the first page as containing "confidential, non-public financial information … [a]ccess [to which] constitutes 'insider' information under certain circumstances, and if it does, it limits your right to buy or sell Microsoft stock or derivatives thereof." During May and early July 2013, Hardy continued to have access to and work on the June board presentation.

23. On June 2, 2013, Hardy received financial data that a senior Windows division finance manager had prepared for inclusion in the June board presentation. The data showed that Microsoft planned to make significant cuts to the price of certain Surface tablet models, the Surface RT model in particular, and corresponding downward adjustments to the revenue projected for those models.

24. Microsoft's board met on June 11 and 12, 2013. During the meeting, Microsoft's CFO used the June board presentation that Hardy helped to prepare to update the board on Microsoft's financial performance and its forecast for the fourth quarter of 2013.

25. On June 12, 2013, Hardy purchased 30 Microsoft put option contracts with a $35 strike price and an October 2013 expiration date. On June 14, 2013, Hardy purchased an additional 70 put options with a $30 strike price and an October 2013 expiration date. At the time, Microsoft's common stock was trading a little above $35 per share.

26. A put option contract gives the owner the right to sell a specified amount of an underlying stock at a specified price, the strike price, before a specified date, the expiration date, after which the put option will expire and become worthless. A put option becomes more valuable as the price of the underlying stock declines relative to the strike price. A person who buys a put option typically believes that the value of the underlying stock will go down.

27. On July 18, 2013, Microsoft issued its fourth-quarter and full-year 2013 earnings results. Microsoft's results missed analysts' projections by the widest margin in a decade. The company reported fourth-quarter revenues of $19.9 billion and earnings per share of $0.59, well below Wall Street analysts' consensus estimates of $20.74 billion and $0.75, respectively.

28. The reported earnings per share, in particular, were very close to the estimates Hardy saw in the June board presentation. The company further reported a $900 million write-off driven by Surface RT price cuts, also consistent with information included in the June board presentation.

29. The announcement caused Microsoft's stock price to fall 11.39%, from $35.44 at the close of trading on July 18, 2013 to $31.40 at the close of trading on July 19, 2013.

30. As a result, Hardy's put options increased in value. On July 25, 2013, Hardy sold all the put options he purchased in June, realizing ill-gotten gains of approximately $9,000.

Complaint
SEC v. Hardy
Case No.

6

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

**C.  Hardy Traded Nokia Call Options Based on Material Non-Public Information about Microsoft's Planned Acquisition of Nokia's Mobile Phone Business**

31. On July 17, 2013, Microsoft's board of directors authorized company management to negotiate definitive agreements relating to a potential acquisition by Microsoft of Nokia's mobile phone business, and certain intellectual property assets, for $7.8 billion, or the equivalent amount denominated in euros. Over the next three days, Microsoft and Nokia senior management participated in telephonic and in-person meetings to discuss the transaction.

32. On July 24, 2013, Microsoft and Nokia entered into a letter agreement outlining the terms of the acquisition. On July 29, 2013, Microsoft began due diligence on the transaction.

33. During or around the last week of July 2013, several of Hardy's CFP&A colleagues, including an employee whom Hardy was mentoring ("Microsoft Employee A"), learned that Microsoft was planning an approximately $7 billion acquisition, and began working on various aspects of that acquisition.

34. During the summer of 2013, Microsoft Employee A's primary assignment was to work on a Microsoft cash-flow model that the CFP&A department used in forecasting and quarterly planning (the "cash flow model"). The cash-flow model contained a line item for acquisitions that reflected what Microsoft expected to spend on acquisitions during the 2014 fiscal year.

35. During the last week of July 2013 – about a week after Microsoft's board authorized management to pursue the Nokia transaction – Microsoft Employee A noticed that this line item had increased dramatically, reflecting that Microsoft anticipated spending approximately $7 billion on acquisitions during the 2014 fiscal year. The increased dollar figure in the acquisition line item appeared in the columns for the first and second quarters of fiscal year 2014, meaning that money was being set aside in the next few months for a major transaction.

Complaint
SEC v. Hardy
Case No.

7

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

36. That same week, Nokia and Microsoft executed the letter agreement outlining the terms of the transaction and Nokia sent Microsoft the first draft of the merger agreement. Around the same time, Microsoft Employee A was assigned the task of "auditing," or double-checking, the cash-flow model to ensure that the new $7 billion acquisition figure properly reconciled with the rest of the model.

37. Based on discussions about the assignment and the newly-increased acquisitions line item in the cash-flow model, Microsoft Employee A understood that Microsoft was planning a cash acquisition in the $7 billion range. Microsoft Employee A also knew, from his cash-flow work and conversations with more senior CFP&A employees, that the transaction would not be denominated in U.S. dollars, because Microsoft did not maintain on-shore cash reserves sufficient to finance an acquisition of that size, meaning that the target was likely a foreign company. From this information, it was evident that Microsoft was likely to acquire Nokia – a large technology company based in Finland.

38. On or before August 2, 2013, Hardy learned that Microsoft was planning a significant transaction with Nokia in the near term.

39. During the summer of 2013, Hardy served as Microsoft Employee A's mentor. The two met regularly, and Microsoft Employee A frequently sought Hardy's advice concerning work-related matters, including Microsoft Employee A's work on the Microsoft cash-flow model. Sometimes he and Hardy met with the cash-flow model in front of them on a computer screen.

40. During August 2013, many of the CFP&A employees with whom Hardy interacted regularly – including two of Hardy's supervisors, one of Hardy's close friends, and a senior manager who occupied the office next to Hardy's and whose telephone conversations Hardy could at times overhear – worked on Nokia-related projects or had knowledge of the planned transaction.

Complaint
SEC v. Hardy
Case No.

8

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

41. Hardy purchased Nokia call options on the basis of material nonpublic information he learned through his employment at Microsoft. On August 2, 2013, the week after the $7 billion acquisition figure appeared in the cash-flow model, Hardy began purchasing Nokia call options. Hardy continued buying Nokia call options throughout August, making purchases on eight separate occasions. His last purchase was on August 27, 2013, less than a week before the public announcement of the Nokia acquisition. In total, Hardy purchased 2,669 Nokia call options for approximately $77,500.

42. A call option contract gives the owner the right to buy a specified amount of an underlying stock at a specified price, the strike price, before a specified date, the expiration date, after which the call option will expire and become worthless. A call option becomes more valuable as the price of the underlying stock increases relative to the strike price. A person who buys a call option typically believes that the value of the underlying stock will go up. A person who buys a call option with a short-term expiration typically believes that the value of the underlying stock will go up in the short term.

43. Hardy purchased Nokia call options that expired in October 2013, consistent with the data in the cash-flow model that indicated the transaction would take place in the near term.

44. Hardy continued to buy Nokia call options even after a major credit ratings agency downgraded the company's debt to B1 – a ratings level well below investment grade – on August 22, 2013.

45. Hardy used a very large percentage of his investment portfolio and overall net worth to make the purchases in Nokia securities.

46. Before August 2013, Hardy had never purchased Nokia securities. In fact, he had never purchased options, or derivative securities of any kind, before the spring 2013.

47. On Monday, September 2, 2013, Labor Day in the United States, Microsoft and Nokia announced that Microsoft would acquire substantially all of Nokia's mobile phone business and certain related intellectual property assets for approximately $7.2 billion. On September 3, the price of Nokia ADSs rose by approximately 30%, closing at $5.12. By the

Complaint
SEC v. Hardy
Case No.

9

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

close of trading that day, Hardy's holdings of Nokia call options had increased in value, resulting in illegal profits of $175,077.

### D. Hardy Breached His Duty To Microsoft And Knew That His Trading Violated Microsoft's Policies

48. When Hardy arrived at Microsoft, he signed an employment contract requiring him to, among other things, "compl[y] with Microsoft's policies as published in the Microsoft Employee Handbook." The Employee Handbook contained an insider trading policy prohibiting him from buying or selling Microsoft securities when he knew "information about the company that is both material and nonpublic." Fiscal quarter and year-end financial results were included in the policy as specific examples of material, non-public information upon which Microsoft employees were prohibited from trading.

49. The insider trading policy also contained similar restrictions on an employee buying or selling "securities of other companies if you have material nonpublic information that was received … by you as a result of … a relationship with a public company with which we are negotiating an investment or acquisition."

50. Hardy knew that he was prohibited from buying and selling securities of Microsoft and other companies (such as Nokia) when he was in possession of material, non-public information.

### E. Hardy Violated the Federal Securities Laws

51. In breach of duties he owed to Microsoft and/or its shareholders, Hardy knowingly and/or recklessly traded Microsoft securities while in possession, and on the basis of, material, nonpublic information about Microsoft's year-end and fourth-quarter 2013 performance.

52. Hardy also breached his duties to Microsoft by misappropriating material, nonpublic information about the Microsoft-Nokia transaction and trading Nokia securities for his own profit on the basis of that information.

Complaint  
SEC v. Hardy  
Case No.

10

Securities and Exchange Commission  
1617 JFK Blvd., Suite 520  
Philadelphia, PA 19103  
Telephone: (215) 597-3100

53. Microsoft's insider trading policy, which Hardy agreed to adhere to, prohibited trading by employees while in possession of material nonpublic information, explicitly including fiscal quarter and year-end financial results and information relating to acquisition transactions.

54. Hardy knew that the information about Microsoft's year-end and fourth-quarter 2013 performance and the Microsoft-Nokia transaction was nonpublic and material and/or acted with reckless disregard of the nature of the information.

55. A reasonable investor would have viewed the information as being important to her investment decision and or significantly altering the mix of information available to the public.

**FIRST CLAIM FOR RELIEF**
**(Violations of Section 10(b) of the Exchange Act**
**and Rule 10b-5 Thereunder)**

56. The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 55, inclusive, as if they were fully set forth herein.

57. By engaging in the conduct described above, Hardy, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

(a) employed devices, schemes, or artifices to defraud;

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

58. By engaging in the foregoing conduct, Hardy has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

Complaint
SEC v. Hardy
Case No.

11

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

I.

Permanently restraining and enjoining Hardy, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Ordering Hardy to disgorge the unlawful trading profits derived from the activities set forth in this Complaint, together with prejudgment interest;

III.

Ordering Hardy to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l];

IV.

Permanently barring Hardy from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

Complaint
SEC v. Hardy
Case No.

12

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

V.

Granting such other and further relief as this Court may determine to be just and necessary.

Dated: March 18, 2016

Respectfully submitted,

By: s/Rachael Clarke

RACHAEL CLARKE
PAUL CHRYSSIKOS
(Conditionally Admitted
Pursuant to Local GR 2(c)(2))
chryssikosp@sec.gov
clarkera@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
1617 John F. Kennedy Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

Complaint
SEC v. Hardy
Case No.

13

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100